**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BRAYDEN R. WARD, through Danielle M. Ward, next friend, individually, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )     Civil Action No. 1:24-cv-00701 (AJT/WBP) <br> ) |
| VIRGINIA POOL SERVICES, INC., *et al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

Before the Court is Plaintiff Brayden R. Ward's, through Danielle M. Ward, next friend, individually ("Plaintiff"), Motion for Default Judgment against Defendants Virginia Pool Services, Inc. ("Virginia Pool"), Pool Services of Virginia, LLC ("Pool Services"), and Diana I. Vermillion ("Vermillion") (collectively, "Defendants"). ("Motion"; ECF No. 10.) This serves as a proposed findings of fact and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C), and a copy will be provided to all interested parties.

### I.　　Procedural Background

Plaintiff, a seventeen-year-old minor resident of Virginia, filed this action through his mother and next friend, Danielle M. Ward. (ECF No. 1 ¶¶ 1-2.) Defendants provide pool services and lifeguard staffing to customers in the Washington, D.C. metropolitan area. (*Id.* ¶ 7.) Plaintiff formerly worked for Defendants, and he brings this action for unpaid wages, liquidated damages, and reasonable attorneys' fees and costs. (ECF No. 10 ¶ 1.)

On April 29, 2024, Plaintiff filed a Complaint against Defendants alleging three counts: Violation of the Minimum Wage Under the FLSA (Count I), Violation of Virginia's Minimum

Wage Act ("VMWA") (Count II), and Violation of the Virginia Wage Payment Act ("VWPA") (Count III). (ECF No. 1.)

On April 30, 2024, the Clerk issued summonses for service on all Defendants (ECF No. 3), after which affidavits of service were filed with the Court reflecting that private process servers served Ms. Vermillion on May 1, 2024 (ECF No. 4), and Virginia Pool and Pool Services on May 13, 2024 (ECF Nos. 5, 6). Defendants were required to file responsive pleadings, respectively, by June 3 and June 15, 2024,[1] which each failed to do. FED. R. CIV. P. 12(a).

On June 24, 2024, Plaintiffs asked the Clerk to enter a default against Defendants (ECF No. 8), which the Clerk entered the next day (ECF No. 9). On June 25, 2024, Plaintiff filed this Motion against all Defendants. (ECF No. 10.) The Court held a hearing on Plaintiffs' Motion on August 23, 2024. Plaintiffs' counsel appeared, but no one appeared on behalf of Defendants.

## II.     <u>Factual Background</u>

The Complaint (ECF No. 1), the Memorandum in Support of Default Judgment (ECF No. 10), and the exhibits attached to the memorandum (ECF Nos. 10-1, 10-2) establish the facts below.

Plaintiff is a seventeen-year-old former employee of Defendants. (ECF No. 1 at 2 ¶ 2.) Virginia Pool and Pool Services are businesses that provide certain pool services—including lifeguarding—to their customers. (*Id.* at 2 ¶¶ 3-4.) On or around January 12, 2024, Plaintiff began working for Defendants as a lifeguard at the Heritage Hunt Golf & Country Club ("Heritage Hunt") and the Dominion Valley Country Club ("Dominion Valley"). (ECF No. 1 at 5 ¶ 23; ECF No. 10-1 ¶ 1.) Defendants agreed to pay Plaintiff a wage of $13.00 an hour. (ECF No. 1 at 5 ¶ 23; ECF No. 13-8.)

---

[1] The deadlines for Defendants' responsive pleadings are discussed below in section III.B.

Ms. Vermillion owns and serves as the officer and principal operator of Virginia Pool and Pool Services, both of which operate as "Virginia Pools." (*Id.* at 2-3 ¶ 5; ECF No. 13-1.) Virginia Pool and Pool Services are both inactive Virginia corporations. (ECF No. 1 at 2 ¶¶ 3-4; ECF No. 13 at 7.) The Virginia State Corporation Commission automatically cancelled Pool Services as a Virginia corporation on June 30, 2023, before Plaintiff began working for Defendants. (ECF No. 13-4.) The Virginia State Corporation Commission automatically cancelled Virginia Pool as a Virginia corporation on January 31, 2024, just weeks after Plaintiff began working for Defendants. (ECF No. 13-5.)

On January 12, 2024, Plaintiff began working for Defendants as a lifeguard at Heritage Hunt and Dominion Valley for an agreed upon hourly rate of $13.00 an hour. (ECF No. 1 at 5 ¶ 23; ECF No. 10-1 ¶ 1; ECF No. 13-8.) On or around February 1, 2024, Defendants stopped paying Plaintiff and all its other lifeguards.[2] (ECF No. 10-1 ¶ 3.) Plaintiff alleges that Defendants used their assets and cash from the businesses to pay other vendors, suppliers, and creditors, as well as to pay certain personal obligations, all to Plaintiff's detriment. (ECF No. 1 at 4-5 ¶¶ 17-18.) Because he was not being paid, Plaintiff stopped working for Defendants on March 26, 2024. (ECF No. 10-1 ¶ 6.) According to his affidavit and a schedule prepared by Ms. Vermillion, between February 1, 2024, and his last day of work, Plaintiff worked 99 hours for Defendants without pay.[3] (*Id.* ¶¶ 4-5; ECF No. 13-7.)  Based on the agreed upon hourly rate of $13.00, Plaintiff alleges Defendants owe him unpaid wages of $1,287. (ECF No. 10 at 4 ¶ 4.)

---

[2] Plaintiff knows of about "a dozen or so" similarly situated workers who also have not been paid by Defendants. (ECF No. 1 ¶ 25.)

[3] While the Complaint alleges that Plaintiff worked without pay from February 1 to March 31, 2024 (ECF No. 1 at 5-6 ¶¶ 23-24), Plaintiff's later-filed affidavit states that he last worked on March 26, 2024 (ECF No. 10-1 ¶ 4). The Court views this factual discrepancy as a distinction without a difference because the number of unpaid hours remains at 99.

Before filing this action, Plaintiff and his mother, Danielle Ward, wrote Ms. Vermillion and tried to get Defendants to pay Plaintiff, without success. (ECF No. 10-1 ¶ 7. *See also* ECF No. 13-6.)

### III.     Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure allows entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Because Defendants have failed to respond or otherwise defend the action, the Clerk entered default against all of them. (ECF No. 9.)

Once in default, the facts alleged in a complaint are considered admitted against the defendants, and the appropriate inquiry is whether the facts alleged state a claim. *See* FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) and *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Even so, the court does not automatically consider as admitted the amount of damages. *See* FED. R. CIV. P. 8(b)(6). Instead, Federal Rule of Civil Procedure 55(b)(2) allows the court to conduct a hearing to determine the amount of damages, to establish the truth of any allegation by evidence, or to investigate any other matter when necessary to enter or carry out judgment.

### A.     Jurisdiction and Venue[4]

A court must establish both subject matter jurisdiction over a claim and personal jurisdiction over a party-in-default before a default judgment may be entered.

---

[4] The Complaint only alleges subject matter jurisdiction, supplemental jurisdiction, and venue. But Plaintiff alleges personal jurisdiction over Defendants in his Memorandum in Support of the Motion for Default Judgment.

As for subject matter jurisdiction, district courts are vested with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies[.]" 28 U.S.C. § 1337(a). The FLSA specifically vests district courts with jurisdiction over any action to recover unpaid minimum or overtime wages. *See* 29 U.S.C. § 216(b). With some exceptions,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

As applied here, because Count I (unpaid minimum wage in violation of the FLSA) arises from a law of the United States, the FLSA, and an Act of Congress regulating commerce, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337. Because Counts II and III (Virginia state-law claims for unpaid wages) arises from the same facts and are based on the same case or controversy as Count I, this Court may exercise supplemental jurisdiction over Counts II and III pursuant to 28 U.S.C. § 1367(a).

This Court has personal jurisdiction over all Defendants, as they are all residents of Virginia. Virginia Pool and Pool Services are corporate entities (respectively, a corporation and a limited liability company) formed under the laws of the Commonwealth of Virginia with their principal places of business in Prince William County, Virginia, and in Prince George's County, Maryland, respectively. (ECF No. 1 at 2 ¶ 3,4.) Ms. Vermillion is a citizen of Virginia. (ECF No. 1 ¶ 5.) Because all Defendants are "at home" in the Eastern District of Virginia, the Court has

general personal jurisdiction over them. *See Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 936 (E.D. Va. 2017) (noting that general personal jurisdiction exists where defendant's affiliations with the state are so "continuous and systematic"—such as a corporation's place of incorporation or principal place of business—that a defendant is essentially at home in the state).

As for venue, it properly lies in "a judicial district in which any defendant resides, if all Defendants are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(1)-(2). Because all Defendants are residents of Virginia and because a substantial part of the events or omissions giving rise to Plaintiff's claims against Defendants occurred in this district, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

For these reasons, the Court has subject matter and personal jurisdiction over this action, and venue is proper in this Court.

**B.**     **Service**

Under Federal Rule of Civil Procedure 4(e)(1), service may be made under the law of the state where the district court is located or where the service is made. Under Virginia law, service of process may be effected by:

> [P]osting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode, provided that not less than 10 days before judgment by default may be entered, the party causing service or his attorney or agent mails to the party served a copy of such process and thereafter files in the office of the clerk of court a certificate of such mailing.

Va. CODE § 8.01-296(2)(b). Federal Rule of Civil Procedure 4(e)(2)(C) also allows for service to be made by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process.

6

According to the affidavits of service filed with the Clerk, a private process server served the summons and Complaint on Ms. Vermillion, as an individual and in her capacity as a trustee for both Virginia Pool and Pool Services, on May 1, 2024, by posting the summons on her front door. (ECF No. 4.) As required by Virginia law, on June 5, 2024, Plaintiff also mailed to Ms. Vermillion a copy of the summons and filed a certificate of mailing with the Clerk's office. (ECF No. 7.) *See* VA. CODE § 8.01-296.

On May 13, 2024, the Clerk of the Virginia State Corporation Commission was served with a copy of the summons and the Complaint as the statutory agent of Virginia Pool and Pool Services, as permitted by Code of Virginia §§ 13.1-836(B) and 12.1-19.1. (ECF Nos. 5, 6.) On that same day, the Clerk of the Virginia State Corporation Commission executed a Certificate of Compliance certifying that a copy of the Service of Process was sent by first class mail to Pool Services' and Virginia Pool's respective registered agents, ND Greene PC and Greene Law Firm, PLLC, in Fairfax, Virginia. (ECF Nos. 5, 6.) *See* VA. CODE § 12.1-19.1.

For these reasons, Defendants were properly served with the summons and Complaint.

### C.      Grounds for Entry of Default

Under Federal Rule of Civil Procedure 12(a), Defendants needed to file responsive pleadings within 21 days after they were served with the summons and Complaint. Under Code of Virginia § 8.01-296, if service is effected by posting a copy of the summons and complaint on the place of abode, the party causing service must also send a copy of the summons and complaint by certified mail "not less than 10 days before judgment by default may be entered[.]" VA. CODE § 8.01-296(2)(b). Plaintiff posted a copy of the Summons and Complaint on Ms. Vermillion's place of abode on May 1, 2024 (ECF No. 4), making her responsive pleadings due May 22, 2024, provided Plaintiff had timely mailed a certified copy of the summons and Complaint to Ms. Vermillion. But Plaintiff did not mail a certified copy of the summons and

Complaint until June 5, 2024 (ECF No. 7), giving Ms. Vermillion until June 15, 2024—10 days after mailing the certified pleadings—to file responsive pleadings.

As to the corporate Defendants, under Code of Virginia § 12.1-19.1, when the Clerk of the State Corporation Commission serves as the statutory agent of a corporation for the purpose of service of process, the time for the entity to respond "shall run from the date when the certificate of compliance is filed[.]" VA. CODE § 12.1-19.1(A). Here, certificates of compliance were filed for Virginia Pool and Pool Services on May 13, 2024. (ECF Nos. 5 and 6.) Thus, Virginia Pool's and Pool Services' responsive pleadings must have been filed by June 3, 2024.

Because Defendants failed to file responsive pleadings by their deadlines, on June 24, 2024, Plaintiffs asked the Clerk of Court to enter a default against them, which the Clerk entered on June 25, 2024. (ECF Nos. 8, 9.)

Accordingly, the Clerk properly entered default against all Defendants.

### D. Liability

Under Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because all Defendants are in default, the Complaint's factual allegations are admitted as to them. *See* FED. R. CIV. P. 8(b)(6). In three counts, Plaintiff alleges that he was not paid for all the hours he worked in violation of the FLSA, the VMWA, and the VWPA. (ECF No. 1 ¶¶ 31–53.) Plaintiff seeks unpaid wages, liquidated damages, treble damages, interest, attorney's fees, and costs. (*Id.* ¶ 54.)

Because the minimum wages analysis under the VMWA mirrors the FLSA analysis, the federal and state-law claims for minimum wages (Counts I and II) are addressed together as FLSA claims. *See* VA. CODE § 40.1-28.9 ("'Federal minimum wage' means the minimum wage or, if applicable, the federal training wage prescribed by the U.S. Fair Labor Standards Act") and *Diaz v. Banh Cuon Saigon Rest., Inc.*, No. 116-cv-00295GBL-TCB, 2016 WL 9223925, at *5

(E.D. Va. Nov. 22, 2016) (stating that the VMWA's definition of employer mirrors the FLSA's definition and the analysis is the same)[5]. The VWPA claim will be treated separately.

### 1.   Minimum Wages Under the FLSA and the VMWA

To establish violations of the FLSA and the VMWA for nonpayment of minimum wages, a plaintiff must show that (1) the plaintiff was employed by the defendant; (2) the plaintiff was engaged in commerce or in the production of goods for commerce;[6] (3) the plaintiff was not compensated for all hours worked during each workweek at a rate equal to or greater than the then-applicable minimum wage; and (4) none of the exemptions in 29 U.S.C. § 213 applied to the plaintiff's position. 29 U.S.C. § 206.

Plaintiff has alleged facts to establish these elements. Plaintiff alleges that Ms. Vermillion was an owner, officer, and principal operator of both Virginia Pool and Pool Services. (ECF No. 1 ¶ 5; ECF No. 13-1; ECF No. 13-3.) Plaintiff also alleges that neither Virginia Pool nor Pool Services were lawfully registered Virginia entities when they employed him. (ECF No. 10 at 5 ¶ 13; ECF No. 13 at 6-9.) Even so, Plaintiff alleges that Ms. Vermillion continued to operate the businesses.[7] (ECF No. 13 at 6-8.) Part of those efforts included Defendants hiring Plaintiff as a lifeguard and signing an employment agreement with him on behalf of both corporate

---

[5] Consistent with the then-text of the VMWA, *Diaz* held that an employee who was covered by the FLSA was not considered an employee under the VMWA. *Diaz*, 2016 WL 9223925, at *5 (citing VA. CODE § 40.1-28.9 (2014) (repealed 2019)). But the VMWA was amended, repealing the language relied upon by *Diaz*. The VMWA no longer prevents employees who are covered by the FLSA from also recovering under the VMWA. *See* VA. CODE § 40.1-28.9 (2023).

[6] 29. U.S.C. § 203(s)(1)(A)(i)-(ii) defines "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that "has employees engage in commerce or in the production of goods for commerce . . . and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]"

[7] Ms. Vermillion's operation of the terminated corporate Defendants, and how that impacts her liability, are discussed below in section III. F.

Defendants. (*Id.*; ECF No. 13-8.) Plaintiff argues that Defendants' conduct renders Defendants an "enterprise" under the FLSA, which states:

> "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units[.]

29 U.S.C. § 203(r).

Plaintiff alleges that, as an enterprise, Defendants served as his supervisors, they set his work schedule and hours, and they controlled his rate and method of pay. (ECF No. 1 ¶ 8.) To support these allegations, Plaintiff submitted a copy of his work schedule provided to him by Ms. Vermillion. (ECF No. 13-7.) Thus, all three Defendants served as his employers for purposes of liability under the FLSA and the VMWA. (ECF No. 1 ¶ 11.)

Plaintiff was also an employee engaged in commerce under 29 U.S.C. § 207, in that he performed lifeguard services for Defendants acting as an enterprise, which had gross annual sales or revenue exceeding $500,000.[8] (ECF No. 1 ¶ 19.) Defendants were thus Plaintiff's employers under the FLSA.[9]

---

[8] In the Complaint, Plaintiff only alleges, "At all relevant times, Defendant engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1))." Plaintiff failed to allege the fact that Defendants met the $500,000 threshold of annual gross revenue. *See Peters v. Xhilaration*, No. 116-cv-00096CMH-MSN, 2016 WL 4599943, at * 3 (E.D. Va. July 26, 2016), *report and recommendation adopted*, No. 1:16-cv-96, 2016 WL 4599903 (E.D. Va. Sept. 2, 2016) (finding that Plaintiff's failure to state plainly that Defendants met the $500,000 threshold rendered the FLSA claim "deficient on its face"). In any event, Plaintiff satisfied this element in his Supplemental Brief (ECF No. 13 at 2-4) with accompanying exhibits, sufficiently pleading that Defendants were an enterprise engaged in commerce under the FLSA. *Compare* ECF No. 13 at 4-5, Ex. 7 *with Peters*, 2016 WL 4599943, at * 4 (plaintiff's supplemental brief did not meet the standard where they failed to provide more detail, even if an estimate).

[9] In his Supplemental Brief, Plaintiff also alleges his entitlement to "individual coverage" under the FLSA. (ECF No. 13 at 5-6.) But the Court need not address this theory of liability since Plaintiff has established that his employers were an enterprise engaged in commerce under the FLSA.

Plaintiff also alleges that he was not compensated for certain hours he worked at a rate equal to or greater than $12.00 an hour and that he was not an exempt employee under 29 U.S.C. § 213. (ECF No. 1 ¶¶ 2, 23–27.) Thus, Plaintiff has established that Defendants failed to pay him the minimum wage under the FLSA and the VMWA.

### 2.      Violations of the VWPA

The VWPA governs when and how employers must pay their employees and how wages may be withheld or forfeited. All employers that operate a business are required to establish rates of pay for employees as well as regular pay periods that are at least once every two weeks or twice each month. *See* VA. CODE § 40.1-29(A). Employers may not "withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without written and signed authorization of the employee." VA. CODE § 40.1-29(C). As of July 2020, the Virginia General Assembly amended the VWPA to allow employees to bring private enforcement actions against employers to recover their wages. *Id.* § 40.1-29(J). The statute instructs courts to assess liability when an employer has "knowingly failed to pay wages to an employee." *Id.* An employer acts "knowingly" if the employer: (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information. *Id.* § 40.1-29(K). As described by the Court of Appeals of Virginia, the purpose of the VWPA "is to protect employees from bad acting employers." *See Nestler v. Scarabelli*, 77 Va. App. 440, 466 (Va. Ct. App. 2023).

The facts alleged in the Complaint, in Plaintiff's declaration, and in the Supplemental Brief show that Defendants violated the VWPA. While Plaintiff alleges that he was paid an hourly rate of $13.00 from January 11, 2024, to February 1, 2024, he also alleges that

Defendants failed to pay him any wages for 99 hours he worked between February 1, 2024, and March 23, 2024. (ECF Nos. 10-1 ¶¶ 1-4.) Defendants were aware of Plaintiff's hours, because they assigned him to work them, as reflected on his work schedule. (ECF No. 13-7.) Plaintiff also wrote Ms. Vermillion "many times" about the missing wages, and Ms. Vermillion refused to pay him. (*Id.* ¶ 7.) For example, Plaintiff attached Exhibit 6 to the Complaint—an email he sent Ms. Vermillion with the subject line, "Pay checks for Brayden Ward." (ECF No. 13-6.) This email generated an automated response from Ms. Vermillion: "Pool Services of Virginia is no longer in business. Please leave an email and we will respond to it." (*Id.*; ECF No. 13-6.) Defendants never responded to any of these communications and otherwise failed to pay Plaintiff. (*Id.*) For these reasons, Defendants violated the VWPA.

> **E.    Damages**

As damages, Plaintiff requests unpaid wages, liquidated damages under the FLSA, treble damages under the VWPA, interest, attorney's fees, and costs. (ECF No. 1 at 8-9 ¶¶ 53-54.) Joint and several liability as to each Defendant is discussed in a later section.

> **1.    Calculation of Unpaid Minimum Wages**

Having established that Defendants failed to pay Plaintiff's minimum wages under the FLSA and the VMWA, Plaintiff is entitled to be compensated for the work he performed in an amount equal to the difference between the wages he received and the $12.00 an hour minimum wage. *See* 29 U.S.C. § 206(a)(1); VA. CODE § 40.1-28.12. While Plaintiff alleges that Defendants promised him $13.00 an hour, that rate is relevant only to a breach of contract claim, which has not been brought here. The amount Plaintiff *should* have been paid under the agreement between him and Defendants for non-overtime hours is inconsequential to claims solely under the FLSA or the VMWA, as these acts only require that an employee be paid the minimum wage. *See id. See also Rodkey v. Griffin*, Civil Action No. 1:20cv329, 2020 WL 9459291, at *6 (E.D. Va. Nov.

30, 2020) (citing *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 683 (M.D. Fla 2008) and *Kimball v. Radius Realty, Inc.*, 2006 WL 8448580, at *2 (M.D. Fla. Mar. 28, 2006)).

Plaintiff received no wages for the 99 hours he worked between February 1 and March 31, 2024, and he requests an award of $1,188.00, which he calculated by multiplying Virginia's $12.00 minimum wage by 99 hours. (ECF No. 1 at 7-8 ¶¶ 40-46.) The Court recommends that, under the FLSA and the VMWA, Plaintiff be awarded his unpaid, non-overtime, minimum wages of $1,188.00.[10]

## 2.    Liquidated Damages

In FLSA cases, employees are routinely awarded liquidated damages equal to the amount of unpaid minimum wage and overtime compensation. *See* 29 U.S.C. § 216(b) and *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985). An employer can avoid liquidated damages if it can be shown "that the act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. 29 U.S.C. § 260. But Defendants have not appeared or presented any defenses to Plaintiff's FLSA claim, so an award of liquidated damages equal to the amount of unpaid minimum wages is appropriate.

While Plaintiff requests an award of liquidated damages using the federal minimum wage calculation ($7.25 x 99=$717.75) (ECF No. 10 at 3-4 ¶¶ 4-8), the FLSA requires employers to pay the federal *or* state minimum wage, whichever is higher. *See* 29 U.S.C. § 218 and *Davila v.*

_____

[10] Plaintiff also advances a claim for $717.75 in FLSA wages based on the federal minimum wage rate of $7.25 per hour. (ECF No. 1 at 6-7 ¶¶ 31-39.) But his claim under the VMWA results in a higher recovery (because of Virginia's higher minimum wage) than his FLSA claim, and he may only recover unpaid wages based on either the federal or the state minimum wage, but not both. *See Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980). Thus, the Court recommends the larger award under the VMWA.

*SJ Perry LLC*, No. 4:23cv33, 2023 WL 5751481, at *2 (E.D. Va. Sept. 6, 2023). *See also Guzman v. KP Stoneymill, Inc.*, No. 8:20-CV-2410-PX, 2024 WL 229564, at *5-6 (D. Md. Jan. 22, 2024) (awarding minimum wage and liquidated damages for FLSA claims based on the state minimum wage). Because the Court recommends an award of unpaid, non-overtime minimum wages to Plaintiff based on Virginia's minimum wage of $12.00, the Court also recommends an award of liquidated damages to Plaintiff equal to the total amount of his unpaid minimum wages based on the state minimum wage of $12.00. Thus, the Court recommends an award of liquidated damages to Plaintiff in the amount of $1,188.00 ($12.00 x 99).

### 3.   VWPA Damages

The VWPA approaches damages very differently from the FLSA and the VMWA. Rather than differentiating between a "minimum wage" and a "regular rate" of pay when computing non-overtime pay and overtime pay, the VWPA provides that "any employer who fails to make payment of *wages* in accordance with subsection A [*i.e.*, "all wages or salaries due him for work performed" prior to termination] shall be liable for the payment of all wages due, and an additional amount as liquidated damages, plus interest at an annual rate of eight percent accruing from the date the wages were due." VA. CODE § 40.1-29(G) (emphasis added). More still, "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney's fees and costs." VA. CODE § 40.1-29(J). The "knowingly" standard can be satisfied simply by providing evidence that the person "has knowledge of the information." VA. CODE § 40.1-29(K).

Thus, if an employer fails to pay an employee a regular rate of pay, over regular pay periods, or fails to pay an employee wages owed when the employment relationship is terminated, the VWPA permits an employee to recover all wages owed plus an additional, equal

amount as liquidated damages, along with eight percent prejudgment interest. If the employee can show the employer had actual knowledge that the employee had not been paid, the VWPA permits an employee to recover triple the wages owed, along with reasonable attorney's fees and costs.

Plaintiff claims that Defendants failed to pay him any wages from February 1 to March 23, 2024. (ECF No. 10-1 ¶ 4.) This fact is corroborated by the employment agreement signed by the parties. (*Id.* ¶ 2; ECF No. 13-8.) Plaintiff's work scheduled—provided to him by Defendants—also demonstrates that Defendants knew the hours they asked Plaintiff to work and that they failed to pay him for this work. (ECF No. 1 at 5 ¶ 26; ECF No. 13-7.) Plaintiff also alleges that Defendants posted no information about wage laws and his ability to enforce them, as required by Virginia law, or that Defendants tried to comply with the wage laws. (ECF No. 1 at 5-6 ¶¶ 27-30.)

Using the analysis in section III(D)(1) for unpaid hours worked for violating the FLSA and the VMWA, but applying the "regular rate" of $13.00 for all non-over time hours worked as required by the VWPA (rather than the minimum wage for non-overtime hours), the VWPA provides a larger recovery for the same number of hours worked. Under the VWPA, for the 99 hours worked, based on the $13.00 hourly rate, Plaintiff is entitled to $1,287.00 in unpaid non-overtime wages. (ECF No. 10 at 2-5 ¶¶ 4, 10, 11.)

Along with an award of all unpaid wages, the VWPA provides for an award of "an additional equal payment of wages" as "liquidated damages." VA. CODE § 40.1.29(G). More still, "[i]f the court finds that the employer knowingly failed to pay wages . . . the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." VA. CODE § 40.1-29(J). As described in section III.(D)(2), Virginia Pool and Pool

Services violated the VWPA,[11] and it did so knowingly, in that they hired Plaintiff, set his schedule, failed to pay him at least once every two weeks or twice in each month, and failed to pay him all wages due for the work they performed when the employment relationship was terminated. Thus, the Court recommends that, under the VWPA, Plaintiff should be awarded $3,861.00 ($1,287.00 x 3) for the nonpayment of wages against Defendants.

### 4.   Attorney's Fees and Costs

Plaintiff also requests reasonable attorney's fees and costs, which are recoverable under both the FLSA and the VWPA. (ECF No. 10 at 9 ¶ 54B.) In his Memorandum in Support of Motion for Default Judgment, Plaintiff asks for $6,205.00 in fees for 14.6 hours of legal time and $650.00 in costs. (ECF No. 10 at 6 ¶ 15.) Plaintiff attached to his memorandum an Affidavit in Support of Attorney's Fees and Costs, which includes a breakdown of his attorney's time spent on the case. (ECF No. 10-2.)

"Under the so-called 'American rule,' a prevailing party generally cannot recover attorneys' fees from the losing party." *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006) (citing *Lee v. Mulford*, 269 Va. 562, 565 (2005)). But the Supreme Court has "recognized departures from the American Rule only in 'specific and explicit provisions for the allowance of attorneys' fees under selected statutes.'" *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 412 U.S. 240, 260 (1975)). In calculating attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, *LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir.

---

[11] Discussed below *in* section III.F, Ms. Vermillion cannot be jointly liable for VWPA violations as a *person* but she may be held liable as a *trustee* of Virginia Pools and Pool Services. *See generally Cornell v. Benedict*, 301 Va. 342, 878 S.E.2d 191 (2022).

2008)). The Fourth Circuit provides twelve factors in determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). The Federal Rules of Civil Procedure allow the prevailing party an award of costs incurred unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. FED. R. CIV. P. 54(d)(1).

The FLSA, VMWA, and VWPA expressly provide for the mandatory award of attorneys' fees and costs. *See* 29 U.S.C. § 216(b); VA. CODE §§ 40.1-28.12, 40.1-29(J). Plaintiff requests reasonable attorney's fees and costs in their Complaint and Motion for Default Judgment. (ECF No. 1 at 9 ¶ 54B; ECF No. 10 at 6 ¶ 15.)

Considering the factors explained by the Fourth Circuit in *Robinson*, the Court finds that the attorney's fees identified in the affidavit attached to the memorandum are reasonable, except as noted below. First, the $425.00 hourly rate charged by Mr. Matthew T. Sutter aligns with hourly rates charged by attorneys of the same level of experience in the Northern Virginia area, and the time he expended on this matter was appropriate and is consistent with the time expended in similar cases. The time spent on the tasks identified in the affidavit, also, is reasonable, with one exception.

One entry on the spreadsheet attached to the affidavit describes reviewing a matter that is seemingly unrelated to this case. (ECF No. 10-2.) The entry reflects the following task, "review case info for Leyva, Michael A. in Prince William GDC." (*Id.* at 2.) Without further explanation about this entry relates to Plaintiff's Motion for Default Judgment, Defendants should not have to pay this fee, and the Court does not award it to Plaintiffs. After deducting this amount, the Court recommends an award of $5,950 for attorney's fees.

Plaintiffs also request costs in the amount of $650.00 for the filing fee ($405.00) and service fees ($245.00). (ECF No. 19-4.) The Court finds these costs to be reasonable and recommends an award of $650.00 for costs.

### 5. Interest

Plaintiffs also request both pre- and post-judgment interest. (ECF No. 1 at 9 ¶ 54A.) While prejudgment interest is not recoverable under the FLSA or the VWPA,[12] the Court may award post-judgment interest at the rate provided by 28 U.S.C. § 1961 for the FLSA claim. *See Kennedy v. A Touch of Patience Shard Hous., Inc.*, 779 F. Supp. 2d 516, 527 (E.D. Va. 2011); *see, e.g.*, *Thomas v. County of Fairfax, Va.*, 758 F. Supp. 353, 370 (E.D. Va. 1991) ("Post-judgment interest is due on awards under FLSA in accordance with 28 U.S.C. § 1961[.]").

Accordingly, the Court recommends an award of post-judgment interest at the rate provided by 28 U.S.C. § 1961.

---

[12] The Supreme Court has "held that FLSA's liquidated damages were provided in lieu of calculating the costs of delay—which is the function of prejudgment interest—and therefore that a claimant could not recover both prejudgment interest and liquidated damages." *Hamilton v. 1st Source Bank,* 895 F.2d 159, 166 (4th Cir. 1990) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715–16 (1945)). Similarly, the VWPA omits the award of prejudgment interest when a court finds that the employer knowingly failed to pay wages to an employee. VA. CODE § 40.1-29(J).

### F.     Joint and Several Liability of Vermillion, Virginia Pools, and Pool Services

The above sections outline liability under the FLSA, the VMWA, and the VWPA for all damages against all Defendants, as Plaintiff's employers. But the framework for individual liability as to each Defendant differs between the FLSA, the VMWA, and the VWPA.

#### 1.     Vermillion is Jointly and Severally Liable with Virginia Pool and Pool Services for FLSA and VMWA Damages

For Ms. Vermillion to be liable for Plaintiff's minimum wages allowed by the FLSA and the VMWA, she must be an "employer," as defined by the FLSA.[13] *See* 29 U.S.C. §§ 206, 207. The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The majority rule is that an individual corporate officer may be an "employer" under the FLSA and subject to liability in their individual capacity if that officer "acts as a supervisor with sufficient control over the conditions and terms of plaintiff's employment." *Zegarra v. Marco Polo, Inc.*, 2009 WL 143428, at *2 (E.D. Va. Jan. 21, 2009) (citation and quotation marks omitted). "The overwhelming authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). Even after a company's dissolution, a corporate officer may still be liable for FLSA violations before the company's dissolution. *See Flores v. Rababeh*, No. 1:15-cv-1415, 2016 WL 3766469, at * 4 (E.D. Va. June 15, 2016), *report and recommendation adopted sub nom. Avila Flores v. Rababeh*, No. 1:15-cv-1415, 2016 WL 3769363 (E.D. Va. July 13, 2016) (finding that corporate

---

[13] The VMWA uses the same definition as the FLSA. *See* VA. CODE § 40.1-29.2. *Cornell v. Benedict*, 301 Va. 342, 348, 350 (2002) (noting that the VMWA adopts the FLSA definition of employer by including persons in addition to entities).

officer who carried on the business of an LLC after it was cancelled was personally liable for FLSA damages); *Vondergathen v. FM Janitorial Servs., Inc. #2*, No. 5:20-cv-160-FL, 2021 WL 6327707, at *4 (E.D.N.C. Jan. 27, 2021) (finding individual employers were still liable for FLSA damages after the company was dissolved).

The facts alleged in the Complaint and in the declaration filed by Plaintiff make plain that Ms. Vermillion was the owner and manager of Virginia Pool and Pool Services. (ECF No. 1 ¶¶ 5, 8, 11–17; ECF No. 10-1 ¶¶ 1-3, 5, 7.) Her role as the owner of the corporate Defendants is also evidenced by the Articles of Incorporation, signed by Ms. Vermillion. (ECF No. 13-1.) Ms. Vermillion also exercised significant control over Plaintiff's day-to-day employment, including the power to hire, fire, and set wages and compensation for them. (ECF No. 1 ¶¶ 5, 8, 11–17; ECF No. 10-1 ¶¶ 1-3, 5, 7.) Her control over Plaintiff's employment is also supported by the Employment Agreement she signed and the schedule she issued to Plaintiff. (ECF Nos. 13-7; 13-8.) Thus, Ms. Vermillion is an "employer" under the FLSA and VMWA and, is jointly and severally liable for Plaintiff's claims under these acts for unpaid minimum wages, liquidated damages, attorney's fees, and costs, as outlined in sections III.(E)(1), (2), (4), and (5).

### 2.   Vermillion is Jointly and Severally Liable with Virginia Pool and Pool Services for VWPA Damages

The VWPA, however, defines "employer" differently than the FLSA. The VWPA defines an "employer" as:

> an individual, partnership, association, corporation, legal representative, receiver, *trustee*, or trustee in bankruptcy doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include *any similar entity* acting directly or indirectly in the interest of an employer in relation to an employee.

VA. CODE § 40.1-2 (emphasis added). This difference is meaningful. As the Supreme Court of Virginia has noted, the FLSA uses the term "persons"; the VWPA uses "entity," instead. *See*

*Cornell v. Benedict*, 301 Va. 342, 349-351 (2022) (holding that, if the Virginia General Assembly had wanted to adopt the FLSA definition of "employer" for VWPA claims, it knew how to do so). But the VWPA definition of employer *does* include "trustee" which is significant for this set of facts.

Virginia Pool is a corporation and Pool Service is a limited liability company. (ECF Nos. 13-1; 13-3.) Under Virginia law, when a corporation's existence is terminated for not filing its annual report or paying its annual registration fee, the director becomes the trustee in liquidation. VA. CODE. § 13.1-752 (C). The trustee is also prohibited from carrying on the business of the corporation. *Id.* While a director cannot be liable for obligations just because of termination, they can be liable when continuing the corporation or acting on behalf of a corporation, knowing that there was no incorporation in existence. *See First Cmty. Bank, N.A. v. Cmty. Youth Ctr.*, 81 Va. Cir. 416, 416 (2010) (stating that Virginia holds those knowingly acting on behalf of a non-existent corporation are jointly and severally liable for all liabilities while so acting). Additionally, if a director enters contracts on behalf of a dissolved corporation, he or she can be held personally liable for liabilities incurred because of those contracts. *See Luce v. Banach,* 67 Va. Cir. 75 (2005) (citing *McLean Bank v. Nelson*, 232 Va. 420 (1986)).

Here, both corporate Defendants were automatically terminated, thus Code of Virginia § 13.1-752 applies to them. (ECF Nos. 13-4; 13-5.) Ms. Vermillion, as the owner and director of Virginia Pool and Pool Services, became the trustee in liquidation for both companies. (ECF No. 13-1; 13-3.) By itself, this fact establishes Ms. Vermillion's personal liability under the VWPA, as trustees are included in the definition of "employer" under the VWPA. Moreover, as already established, Ms. Vermillion was acting as though the companies were still active and entered into an Employment Agreement with Plaintiff, on behalf of Pool Services and Virginia Pool. (ECF

No. 13 at 7-8; ECF No. 13-8.) Consequently, as a trustee in liquidation for both corporate Defendants, she is jointly and severally liable for the treble damages awarded to Plaintiff.

## IV.     Recommendation

The undersigned recommends entry of default judgment for Plaintiff and against Defendants. The undersigned finds that the submitted pleadings and affidavits establish that Plaintiff has a right to a default judgment and damages of $6,237.00. All the Defendants are liable, jointly and severally, for the total damages awarded. The undersigned also recommends that Defendants, jointly and severally, pay Plaintiff's attorneys' fees and costs in the amount of $6,600.00. The recommended total award is $12,837.00.

## V.     Notice

Through the Court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Ms. Vermillion, Virginia Pool, and Pool Services at 6603 Parville Loop, Gainesville, VA 20155, the parties are notified that objections to these proposed findings of fact and recommendations must be filed within 14 days of service of this proposed findings of fact and recommendations, and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Entered this 23rd day of August 2024.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia

22